339 P.2d 1029

MOUNTAIN STATES TELEPHONE AND
TELEGRAPH COMPANY, a
corporation, Appellant,

v.

E. F. VICKERS, Sr., W. P. Mahoney and
Gene Bogard as Chairman and members
of the Employment Security Commission
of Arizona; The Employment Security
Commission of Arizona; Communications
Workers of America, Local 8519; H. B.
Peterson, B. T. Singer, Margaret Hen-
dricksen; and Nine Hundred Sixty Nine
Other Claimants for Unemployment Bene-
fits, Appellees.

No. 6435.

Supreme Court of Arizona.

May 27, 1959.

Rehearing Denied July 7, 1959.

John R. Turnquist, Denver, Colo., and Fennemore, Craig, Allen & McClennen, Phoenix, for appellant.

Robert Morrison, Atty. Gen., Robert Steward, Asst. Atty. Gen., Morris K. Udall, Special Asst. Atty. Gen., for appellees.

W. C. TRUMAN, Superior Court Judge.

This is an appeal by the Mountain States Telephone and Telegraph Company, a corporation, (hereinafter referred to as the Company, or Appellant) from the decision of the Superior Court of Maricopa County in which the Court affirmed the findings of the Employment Security Commission (hereinafter referred to as the Commission) that there had been a violation of the Revenue Accounting Contract by the Mountain States Telephone and Telegraph Company, a corporation, in assigning or transferring an employee from its Revenue Accounting Division to its Disbursement Accounting Division without the agreement of the Union, said contract having been entered into on the 10th day of December, 1955, between the Company and the Communications Workers of America (hereinafter referred to as the Union), as bargaining agent for the Claimants, and of its Local No. 8519 located in Phoenix, Arizona.

There is also a cross-appeal by the Union from the judgment of the lower court in which the findings of the Commission declaring the Company to have violated the provisions of the plant contract in regard to promotion were reversed in that the record disclosed that said findings were unsupported by competent, material and substantial evidence.

At stake in this appeal is whether or not some 972 employees of the Company are en-

titled to or eligible for unemployment compensation under Chapter 4, Title 23, Arizona Revised Statutes. The period involved extends from March 7, 1956, the date the employees went on strike when they learned that some would be transferred without approval or consent of the Union to the new Disbursement Accounting Division, to the 11th day of May, 1956, when the strike was terminated by mutual agreement.

Under the appropriate provisions of the law involved there was a hearing before a special deputy, thence an appeal to the Commission and a review of the final decision of the Commission by the Superior Court of Maricopa County, and now this appeal to this Court. The case as presented concerns itself with two of several contracts negotiated between representatives of the Union and the Company. They are designated in this decision as the "Plant Contract" and the "Revenue Accounting Contract".

The dispute in regard to the Revenue Accounting Contract arose when the Company transferred, or the Union learned that the Company planned to tranfer, certain of the employees of the Revenue Accounting Division to the new Machine Service Section of the Disbursements Accounting Division without mutual agreement of the parties to the contract. There is no dispute as to the facts; the issue must be decided upon the interpretation of the contract in the light of the law germane thereto.

The pertinent sections of the contract which the Union claims the Company violated by such action read as follows:

"Article 1—Recognition

"1.1 The Company hereby recognizes the Union as the exclusive bargaining agent for all eligible employees in the Revenue Accounting Division in the state of Arizona, whose titles are included in the list of job titles contained in Attachment B, attached hereto and made a part hereof, hereinafter called 'employees' for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.

"1.2 Neither the Company nor the Union shall either change, delete or add to the list of job titles contained in Attachment B, or establish new job titles or classifications for employees included in or eligible for inclusion in the Arizona Revenue Accounting Division bargaining unit, except by mutual agreement between the Company and the Union. Only those changes, deletions or additions or new job titles or classifications as are mutually agreed upon shall be made to the list of job titles contained in Attachment B."

It was the apparent position of the lower court that before a transfer of employees might be made from one department of the Company to another, or from one bargain-

ing unit to another bargaining unit, or from one bargaining unit to a non-bargaining unit, the matter must first be presented to the Union representatives and a mutual agreement reached with respect to such transfers. There is no such provision in the contract.

The record discloses that the reasons for the transfer of employees and business functions from the Revenue Accounting Division to the Machine Service Section of the Disbursements Accounting Division are economic in nature. The title of the new installation indicates in itself that it relates to advances in automation. The evidence in the record discloses that the economic advantages of the installation necessitated full use of the automatic accounting devices installed. There is no prohibition whatsoever in the contract which requires the Company to reject improvements in the art because of the necessity of transfers in personnel and business functions which will result therefrom.

The Union admitted at the hearing that the Company had not deleted, changed or added to the list of job titles contained in Attachment B and had not established any new job titles in the Revenue Accounting Division. The Union's objections were limited to transfer of job functions and personnel. Consequently, in view of the Union's admission, it cannot be contended that the Company has violated any provision of Article 1.2 of the Working Agreement, su-

pra, and it is perfectly apparent that nothing in Article 1.2, supra, grants any prospective jurisdiction to the Union over new work outside the bargaining unit or places any limitation on the right of the Company to transfer work out of the bargaining unit.

However, it is significant to note that the contract itself specifically recognized the possible transfer by the Company of employees out of the bargained unit. Article 8 of the Working Agreement specifically provides that the Company shall give the Director, District 8, Communications Workers of America, notice as far in advance as possible of the Company's decision to promote or transfer a Union Officer or steward to a position or location which might render the employee ineligible to hold his Union office. No such provision requiring notice of any kind is found in the contract with respect to employees other than those employees who are also officers or stewards. The contract nowhere places a limitation on the right of the Company to transfer employees out of the unit.

The Recognition clause, by way of limitation, merely provides that the job titles set forth in Attachment B for the Revenue Accounting Division may not be changed, by either adding new job titles or deleting existing job titles, without mutual consent— that and no more. No new job titles have been added to or taken from the Revenue Accounting Division. Therefore, since

there is no grant to the Union, in clear and unambiguous terms, of jurisdiction to the disputed work by contract, the Company was free to make the work assignment as would best serve its purposes. The authorities uniformly hold that in the absence of clear and unambiguous contract provisions limiting the authority of management (which is totally absent in this case), an employer is free to make work assignments unilaterally and without consent or approval of the Union. See E. I. DuPont de Nemours and Company v. Buffalo Rayon Workers, 99 N.L.R.B., page 390; Cargill, Inc., 108 N.L.R.B., page 313; Rothermel Brothers, 108 N.L.R.B., page 712; Bechtel Corp., 108 N.L.R.B., page 823, reaffirmed, 112 N.L.R.B., page 812; Acousti Engineering, 114 N.L.R.B., page 1415; Farnsworth & Chambers Co., 115 N.L.R.B., page 617; Operating Engineers Union, 116 N.L.R.B., page 27; Amalgamated Association etc. v. Greyhound Corp., 5 Cir., 231 F.2d 585, 57 A.L.R.2d 1394.

The Company has steadfastly maintained and the record is replete with the testimony that it was management's sole prerogative to make work assignments. The Union and its bargaining representatives were very cognizant of the Company's position. In fact, during the negotiations of the Revenue Accounting Contract the Union submitted an amendment to the article involved that would have clearly accomplished the interpretation it contends exists in the contract as written. This amendment was rejected by the Company. The Union well knew the interpretation placed upon this provision of the contract by the Company, sought to amend it, asked for a letter outside the contract containing the provisions as set forth in the proposed amendment, were denied, and finally signed the contract. To this Court the above actions on the part of the Union lead to the conclusion that either there was no contract for lack of mutuality or that the Union accepted the interpretation as placed upon it by the Company. Under either situation the claimants would be disqualified for benefits under Paragraph A of A.R.S. § 23–777, and would not come within the exception set forth in Paragraph B of said section.

In the cross-appeal the Union claims that the Company violated the provisions of Section 13, paragraph 13.1 of the Plant Contract effective November 20, 1955, in regard to changes of assignments or promotions. The particular provision reads as follows:

"Section 13

"Seniority

"13.1 In the selection of employees for changes in assignments the Company shall adhere to the principle that seniority (net credited service) shall govern if all other qualifications of the individuals are considered to be substantially the same."

This provision in the prior or 1954 contract reads as follows:

"13.1   In the selection of employees within the bargaining unit for changes in assignment, either within or outside the bargaining unit, length of net credited service shall govern if all other qualifications of the individuals ,as determined by Management are substantially equal."

The dispute arose when the Company assigned an employee by the name of Stone to the position of test deskman over an employee by the name of Singer. It is admitted by the Company that Singer had approximately 10 years seniority over Stone. However, the Superior Court in its judgment found that the decision of the Commission declaring the Company in violation of the contract in promoting Stone over Singer was unsupported by competent, material and substantial evidence in view of the entire record submitted.

It is therefore incumbent upon this Court to determine that such is the state of the record before going into the respective positions of the parties as to the interpretation of the contract.

After a careful review of the record we find that the judgment of the lower court in this aspect of the case should be affirmed.

The record discloses that the two employees were rated equally as far as the knowledge of their respective positions was concerned but in other qualities, such as quality and quantity of work, attitude, aptitude and others usually expected in employees for the purposes of advancement, Stone was found to excel. This was not in any manner contradicted by competent, material and substantial evidence.

It therefore follows that the judgment of the Superior Court of Maricopa County is affirmed as to the Plant Contract and reversed as to the Revenue Accounting Contract, and the case is hereby remanded for entry of judgment consistent herewith.

PHELPS, C. J., STRUCKMEYER, J., and WINDES, J., retired, and CHARLES P. ELMER, Superior Court Judge, concur.

NOTE. UDALL and JOHNSON, JJ., were disqualified to sit in this case and Honorable CHARLES P. ELMER, Judge of the Superior Court of Mohave County, and Honorable W. C. TRUMAN, Judge of Superior Court of Pinal County, sat in their stead. WINDES, J., sat in the case and heard oral arguments therein but has since retired. By stipulation of all parties litigant he is participating in the rendition of this decision.